IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

IN RE:

ATTORNEY JEFFREY K. MARTIN, ESQ., A MEMBER OF THE BAR OF THIS COURT

Misc. No. 14-242

UNDER SEAL

MEMORANDUM ORDER

Presently before the Court is Respondent Jeffrey K. Martin's request to call six witnesses at a hearing related to this Court's Order to Show Cause, dated December 5, 2014. (D.I. 7). Pursuant to D. Del. LR 83.6(b)(2), the Court ordered Respondent to show cause as to why it should not impose reciprocal discipline identical to that imposed by the Supreme Court of Delaware. (D.I. 3). The Supreme Court of Delaware suspended Respondent for one year for assisting in the unauthorized practice of law, failure to properly supervise a non-lawyer assistant, and sharing a contingent fee with a non-lawyer.[1] (D.I. 7 at p. 2). The Court scheduled a hearing for January 29, 2015. (D.I. 3). Respondent answered on January 5, 2015. (D.I. 7). For the reasons set forth below, Respondent's request to call witnesses other than himself is **DENIED**.

"A reciprocal disciplinary proceeding . . . , in which a federal court initiates action against a member of its bar based on the outcome of a state disciplinary proceeding against that attorney, requires federal courts to conduct an independent review of the state disciplinary

---

[1] Specifically, the Supreme Court of Delaware found that Respondent violated Delaware Lawyers' Rules of Professional Conduct 3.4(c), 5.3(a), 5.4(a), 5.5(a), and 8.4(d). (D.I. 8, Ex. 7, pp. 16-18).

1

proceeding prior to imposing punishment." *In re Surrick*, 338 F.3d 224, 231 (3d Cir. 2003). A state disciplinary decision is "not conclusively binding on the federal courts," but it is "entitled to respect." *In re Ruffalo*, 390 U.S. 544, 547 (1968).

The Supreme Court has held that a district court's review should entail "an intrinsic consideration of the record." *Selling v. Radford*, 243 U.S. 46, 51 (1917). That is to say, "there is no entitlement to a *de novo* trial before the District Court." *In re Surrick*, 338 F.3d at 232. Rather, the district court should look at the state record as a whole and determine whether there was a lack of due process, an infirmity of proof, or other "grave reason" not to impose reciprocal discipline. *Id.* at 231-32 (quoting *Selling*, 234 U.S. at 51); *see* D. Del. LR 83.6(b)(4)(A-C).

This Court has a comprehensive record of the state proceedings on which to base its review.

Respondent's argument that he violated no disciplinary rules is based on the following factual allegations: (1) Feuerhake was admitted to practice in this Court at the time Respondent assisted him in the "unauthorized" practice of law; (2) Respondent identified Feuerhake as a paralegal, and did not assist him in the "unauthorized" practice of law before the District Court; and (3) any fees paid to Feuerhake were only for work that he did before July 13, 2010, while he was indisputably a lawyer. (D.I. 7 at pp. 2-6; *see In re Feuerhake*, suspension order, No. 160, 2010 (Del. July 13, 2010)). Respondent also argues that the penalty imposed by the Delaware Supreme Court was too severe. (*Id.* at pp. 6-7).

Respondent proposes to call six witnesses "at trial." (D.I. 7 at p. 8). In support, he identifies two arguments that might require factual testimony. The first is that Feuerhake was licensed to practice before the District Court, and not the subject of reciprocal discipline. The

2

difficulty with this argument is that Respondent and Feuerhake both knew that Feuerhake was suspended at the time of the pretrial conference, as well as at all other relevant times up to and including November 18, 2014, Respondent's date of suspension. (*See* D.I. 8, Ex. 4, pp. 52-55 (RESPONDENT: "[T]he recent order . . . used the term 'Herbert Feuerhake, Esquire,' as if he was counsel. We were both concerned with that. When we saw that, we thought we would bring that to your attention today. If we can modify the order so it doesn't look as though –." *Id.* at p. 54). The first time Respondent argued that Feuerhake had not been suspended in this Court was on December 8, 2014 in a motion for reargument to the Supreme Court. (D.I. 8, Ex. 8, pp. 1-2).

As a factual matter, this proceeding is the first time this Court has used the procedures set forth in D. Del. LR 83.6(b). In the past, the Court has simply treated the discipline imposed by the Supreme Court as the reciprocal discipline imposed by this Court.[2] The Clerk's Office keeps a list of disciplined attorneys. As the Clerk receives notice that an attorney has been suspended or disbarred, the attorney's name and the nature of the discipline are added to the list.[3] The "intake section" of the Clerk's Office is notified to "screen [] new cases and filings"[4] and to notify the Court should the disciplined attorney try to make a filing. The attorney is deactivated from CM/ECF, meaning that the attorney can no longer file documents electronically.[5] The receiver appointed by the Court of Chancery writes explaining who will take over the disciplined attorney's cases. (*See, e.g.*, C.A. No. 08-324, D.I. 31 (letter from Feuerhake's receiver stating

---

[2] The first step of the LR 83.6(b)(1) procedure is that the disciplined attorney "promptly inform the Clerk of such action [*i.e.*, the discipline]." The Clerk has no record that Feuerhake did this. Disciplinary Counsel did provide such notification by letter dated July 16, 2010, with a certified copy of the suspension order.
[3] Disciplinary Counsel emailed the Clerk on July 13, 2010 that Feuerhake had been suspended. Feuerhake's name was added to the Clerk's list of disciplined attorneys on July 14, 2010. The Clerk also updates the "Bar Membership Information" in the CM/ECF system to show the current "status." Feuerhake's status was updated to "Suspended."
[4] The Clerk made such notification about Feuerhake on July 14, 2010.
[5] The Clerk makes such deactivations as a routine matter. The system is not perfect. For reasons that cannot be explained, Feuerhake was able to use his CM/ECF privileges to make two filings, both of which were signed by Respondent, after his suspension. *See* C.A. 06-104, D.I. 261 & 280.

3

that Respondent would now be solely responsible for the case)).[6] The procedure set forth in D. Del. LR 83.6(b) was not used in regard to Feuerhake. The effect, if any, of the procedures followed in response to Feuerhake's suspension is not a question on which testimony is needed.

The other argument Respondent identifies as requiring factual testimony is the conduct of the pretrial conference. (D.I. 7 at p. 8). No witnesses are needed in that regard, as there is a transcript of the conference in the record already.

Thus, there is no apparent reason to hear testimony from any of the proposed fact witnesses for the arguments Respondent intends to make. Two of the proposed witnesses testified in the state proceedings. The two Disciplinary Counsel do not have any testimony that, based on Respondent's answer, would be relevant to this Court's review. The fifth proposed witness is an employee of the Court, and the Court does not need to hear her testimony to conduct its review.

Respondent will be given the opportunity to testify at the hearing. Any other testimony would turn the hearing into a new trial on the merits, which is beyond the scope of the Court's review.

Entered this 13th day of January, 2015.

PER CURIAM

---

[6] The dockets in the five open cases in which Feuerhake was counsel of record reflect such letters. *See also* C.A. No. 06-104, D.I. 162; C.A. No. 09-252, D.I. 29; C.A. No. 09-374, D.I. 9; C.A. No. 10-536, D.I. 3 (all indicating that Feuerhake's clients were obtaining new counsel).

4