IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN RE:

ATTORNEY JEFFREY K. MARTIN, ESQ., A MEMBER OF THE BAR OF THIS COURT

Misc. No. 14-242

**MEMORANDUM ORDER**

Presently before the Panel[1] is a disciplinary matter involving Respondent Jeffrey K. Martin. As set forth in further detail below, the Delaware Supreme Court suspended Mr. Martin from practicing law in Delaware for a period of one year for assisting in the unauthorized practice of law, failure to properly supervise a non-lawyer assistant, sharing a contingent fee with a non-lawyer, and engaging in conduct prejudicial to the administration of justice. (D.I. 7 at p. 2). The Panel held a hearing regarding the imposition of reciprocal discipline on January 29, 2015.

Having undertaken the analysis required under the Court's Local Rules, the Panel finds that the record supports the Delaware Supreme Court's finding that Mr. Martin violated multiple rules of professional conduct. However, the Panel also finds that these violations "warrant [that] substantially different discipline" be imposed here than was imposed by the Delaware Supreme Court. *See* D. Del. LR 83.6(b)(4)(D). For the reasons set forth herein, the Panel suspends Mr. Martin from practice in this Court for a period of four months, retroactive to the date of his state

[1] For purposes of this proceeding, the Panel consists of Chief Judge Stark, Judge Robinson, and Judge Andrews.

court suspension. At the completion of his suspension, Mr. Martin will have the opportunity to petition for reinstatement.

## BACKGROUND

### A. Disciplinary History

Mr. Martin was admitted to the Delaware bar in 1985. *In re Martin*, 105 A.3d 967, 2014 WL 6998797, at *1 (Del. Nov. 18, 2014), *reargument denied* (Dec. 16, 2014). In 2009, the Office of Disciplinary Counsel ("the ODC") began investigating Mr. Martin based on a report from an employee that he failed to pay payroll taxes. *In re Martin*, 35 A.3d 419, at *1 (Del. 2011). The investigation revealed that Mr. Martin had not been paying taxes and that his books and records did not comply with Delaware Lawyers' Rule of Professional Conduct 1.15(b). *Id.* In May 2009, Mr. Martin agreed to a private admonition with conditions for violations of Rules 1.15(b), 5.3, and 8.4(d). *Id.*

In August 2010, another disciplinary complaint was filed against Mr. Martin. *Id.* After investigation, the Board on Professional Responsibility ("the Board") found that Mr. Martin violated the conditions of his private admonition, failed to promptly pay taxes, failed to properly maintain his law practice's books and records, failed to adequately supervise his non-lawyer assistant's conduct in regard to keeping his practice's books and records, and filed certificates of compliance that contained misrepresentations. *Id.* at *1-2. The Board recommended a public reprimand and a one-year probation with conditions. *Id.* at *1. The Delaware Supreme Court adopted the Board's recommendation. *Id.*

### B. Conduct Following Herbert Feuerhake's Suspension

The conduct at issue in this matter relates to Mr. Martin's actions while Herbert Feuerhake was serving as his paralegal. Mr. Feuerhake and Mr. Martin have a close personal

and professional history. Mr. Feuerhake worked for Mr. Martin as an associate from 1998 to 2001. *In re Martin*, 2014 WL 6998797, at *1. In 2009, the ODC was investigating Mr. Feuerhake for disciplinary violations. *Id.* During the investigation, Mr. Martin served as Mr. Feuerhake's practice monitor. *Id.* Mr. Feuerhake moved his practice to Mr. Martin's office space and the two served as co-counsel in two cases pending in this Court, *Lamb v. Taylor* (hereinafter, "*Burns*"[2]) and *Barkes v. First Correctional Medical Servs. Inc. Id.* Both cases had contingent fee arrangements whereby Mr. Martin would receive 60% and Mr. Feuerhake 40%. *Id.*[3]

Following the disciplinary investigation, the Board recommended that Mr. Feuerhake be suspended with conditions for two years. *In re Feuerhake*, 2010 WL 2757030, at *1 (Del. July 13, 2010). Mr. Feuerhake did not object to the recommendation, and the Delaware Supreme Court adopted it. *Id.* at *1, 4. The July 2010 suspension order's conditions included prohibitions on Mr. Feuerhake: (1) directly or indirectly practicing law; (2) sharing legal fees, except those earned before the suspension; and (3) having contact with clients, prospective clients, witnesses, or prospective witnesses when acting as a paralegal or legal assistant. *Id.*

During his suspension, Mr. Feuerhake worked for Mr. Martin as a paralegal. *In re Feuerhake*, 89 A.3d 1058, 1059 (Del. 2014) [hereinafter, "*In re Feuerhake II*"]. Although Mr. Martin knew that Mr. Feuerhake was suspended, he did not read the suspension order. *In re Martin*, 2014 WL 6998797, at *2. While serving as a paralegal, Mr. Feuerhake communicated with Ms. Lamb and Ms. Barkes, the clients in the cases for which he had previously served as

---

[2] For ease of reference, the Panel will follow the practice of the Delaware Supreme Court and the parties to the state proceedings and refer to *Lamb v. Taylor* as the *Burns* litigation.

[3] By agreement between Mr. Martin and Mr. Feuerhake, a third attorney received a portion of the fee ultimately recovered in the *Burns* litigation, while preserving the relative 60/40 split between Mr. Martin and Mr. Feuerhake, respectively.

co-counsel. *In re Feuerhake II*, 89 A.3d at 1059-60. Mr. Feuerhake spoke with Ms. Barkes on at least twenty occasions and attended four depositions at which she was present. *Id.* at 1060. Mr. Feuerhake also communicated with opposing counsel regarding a pretrial order. *Id.*

On January 11, 2012, Mr. Feuerhake and Mr. Martin attended a pretrial conference in the *Burns* case before the Honorable Gregory M. Sleet. (Tr. at 42-43).[4] Mr. Feuerhake was introduced as a paralegal. (*Id.* at 43). In response to a question from Judge Sleet, Mr. Martin asked to defer to Mr. Feuerhake. (*Id.*) Mr. Feuerhake responded to the question, and spoke several more times at Judge Sleet's invitation. (*Id.*) Throughout the course of the pretrial conference, Mr. Feuerhake made objections, responded to opposing counsel, and distinguished case law. *In re Feuerhake II*, 89 A.3d at 1060.

In addition to working on the *Burns* and *Barkes* lawsuits, Mr. Feuerhake assisted Mr. Martin as a paralegal in several employment cases. *In re Martin*, 2014 WL 6998797, at *2. For the employment cases, Mr. Feuerhake was paid an hourly wage. *Id.* Mr. Feuerhake did not receive an hourly wage for his work on the *Burns* and *Barkes* cases. *Id.* The *Burns* litigation settled in April 2012. *Id.* at *3. Mr. Martin paid Mr. Feuerhake $39,466, which is precisely what Mr. Feuerhake would have received pursuant to the 60/40 split of the contingent fee agreement.[5] *Id.*

---

[4] Citations to "Tr." refer to the transcript of the disciplinary hearing the Panel held on January 29, 2015.

[5] In *In re Martin*, the Delaware Supreme Court stated that Mr. Feuerhake sent Mr. Martin an email in September 2011 indicating that for the *Burns* and *Barkes* cases, the fee agreement entered into when Mr. Feuerhake was a licensed lawyer would continue to operate. 2014 WL 6998797, at *2 The Panel has not seen the email, nor is it discussed in *In re Feuerhake II*, from which the Delaware Supreme Court gathered facts for *In re Martin*. *Id.* at *2 n.9. Nevertheless, Mr. Martin has not objected that no such email exists.

The ODC filed a petition for discipline against Mr. Feuerhake in 2013. *In re Feuerhake II*, 89 A.3d at 1060. Following an investigation and a hearing, the Board found that Mr. Feuerhake had violated Rule 7(c) of the Delaware Lawyers' Rules of Disciplinary Procedure and Delaware Lawyers' Rules of Professional Conduct 3.4(c) and 8.4(d) by knowingly disobeying his suspension order by continuing to practice law. *Id.* at 1059. The Board recommended disbarment, and the Delaware Supreme Court adopted the recommendation. *Id.* at 1063.

**C. State Court Disciplinary Proceedings**

The ODC also filed a petition for discipline against Mr. Martin. *In re Martin,* 2014 WL 6998797, at *3. The petition alleged that Mr. Martin violated:

> (i) Rule 3.4(c) by knowingly permitting Feuerhake, a suspended lawyer, to practice law in violation of the Court's suspension order; (ii) Rule 5.3(a) by failing to supervise a nonlawyer assistant adequately and make reasonable efforts to ensure that Feuerhake did not engage in the unauthorized practice of law; (iii) Rule 5.4(a) by sharing legal fees with Feuerhake while he was suspended; (iv) Rule 5.5(a) by assisting Feuerhake in the unauthorized practice of law by allowing him to contact clients, appear in court, and engage in other acts constituting the practice of law; (v) Rule 8.4(d) by engaging in conduct prejudicial to the administration of justice by assisting Feuerhake's unauthorized practice; and (vi) Rule 8.1(a) by knowingly making a false statement when he denied supervising Feuerhake as a paralegal in his response to the ODC's petition.

*Id.* (internal citations omitted).

The Board held separate violation and sanction hearings. *Id.* at *4. After the violation hearing, the Board found that Mr. Martin had violated Rule 5.5(a) and Rule 8.4(d). *Id.* The Board found that Mr. Martin violated Rule 5.5(a) by requesting that Mr. Feuerhake be allowed to respond to Judge Sleet's question at the pretrial conference. *Id.* The Board did not find that Mr. Martin's other conduct assisted Mr. Feuerhake in the unauthorized practice of law. *Id.* The Board found that by violating Rule 5.5(a), Mr. Martin engaged in conduct prejudicial to the administration of justice and thereby violated Rule 8.4(d). *Id.*

The Board found no other violations. *Id.* With respect to Rule 3.4(c), the Board found that Mr. Martin did not knowingly permit Mr. Feuerhake to violate the suspension order because the order was not readily publicly available. *Id.* The Board found that Mr. Martin did not violate Rule 5.3(a) because, "It can hardly be said that Mr. Feuerhake's unauthorized practice of law was a result of [Martin's] lack of supervision when it occurred in [Martin's] presence." *Id.* (quoting Board's Report and Recommendation at pp. 13-14) (alterations in original). The Board found no violation of Rule 5.4 because it concluded that Mr. Feuerhake was entitled to his full share of the contingent fee in the *Burns* litigation for the work he performed before his suspension under a *quantum meruit* theory. *Id.* Finally, the Board found that Mr. Martin did not violate Rule 8.1(a) because, in saying that he did not supervise Mr. Feuerhake, he was "drawing a distinction between supervising Mr. Feuerhake as compared to Mr. Feuerhake's work." *Id.* (quoting Board's Report and Recommendation at pp. 16-17).

At the separate sanctions hearing in April 2014, the Board considered mitigating and aggravating factors. *Id.* at *5. As mitigating factors, the Board considered Mr. Martin's cooperation with the proceedings and his good character and reputation. (Board's Report and Recommendation at p. 21). The Board did not address evidence of Mr. Martin's medical issues and expressions of remorse as mitigating factors. *In re Martin,* 2014 WL 6998797, at *5. As aggravating factors, the Board considered Mr. Martin's prior disciplinary history and experience practicing law. (Board's Report and Recommendation at p. 20). The Board did not agree with ODC's contention that Mr. Martin acted with a selfish motive or that he had a pattern of misconduct. (*Id.*). The Board recommended a private admonition. (*Id.* at p. 24).

Both Mr. Martin and the ODC filed objections to the Report. *In re Martin,* 2014 WL 6998797, at *5. The ODC contended that the Board should have found that Mr. Martin

knowingly violated a court order by allowing Mr. Feuerhake to practice law and share legal fees. *Id.* The ODC requested that the Delaware Supreme Court find that Mr. Martin violated Rules 3.4(c), 5.3(a), 5.4(a), 5.5(a), and 8.4(d). *Id.* The ODC argued that the appropriate sanction was disbarment. *Id.*

Mr. Martin argued that the Board erred in finding that he violated Rules 5.5(a) and 8.4(d). *Id.* He argued that Mr. Feuerhake misled him about the suspension conditions. *Id.* He also contended that he did not violate Rule 5.5(a) at the pretrial conference because he identified Mr. Feuerhake as a paralegal and Judge Sleet invited Mr. Feuerhake's participation. *Id.* Mr. Martin argued that the Board should have considered his expressions of remorse and medical issues as mitigating factors. *Id.* He further argued that, should the Delaware Supreme Court find any violations, the appropriate sanction would be a warning or private probation.

The Delaware Supreme Court conducted an independent review of the record to determine if there was clear and convincing evidence of knowing misconduct. *Id.* at *6; *see also In re Bailey*, 821 A.2d 851, 862 (Del. 2003) (describing procedure for review of disciplinary hearings). The Delaware Supreme Court found that

> the record establishes that Martin knowingly violated: (i) Rule 3.4(c) by assisting Feuerhake to practice law in violation of the Court's suspension order; (ii) Rule 5.5(a) by assisting Feuerhake in engaging in the unauthorized practice of law; and (iii) Rule 8.4(d) by engaging in conduct prejudicial to the administration of justice by assisting Feuerhake's unauthorized practice.

*In re Martin,* 2014 WL 6998797, at *6 (internal citations omitted). The Delaware Supreme Court found that the record established by clear and convincing evidence that Mr. Martin assisted Mr. Feuerhake by allowing him to appear before Judge Sleet and argue case law, attend depositions, and meet with clients. *Id.*

The Delaware Supreme Court further found that Mr. Martin knowingly violated Rule 5.3(a) by failing to supervise Mr. Feuerhake. *Id.* at *6-7. The Delaware Supreme Court stated that Mr. Martin should have read the suspension order before allowing Mr. Feuerhake to act as a paralegal. *Id.* at *6. The Delaware Supreme Court disagreed with the Board's conclusion that the suspension order was not readily publicly available. *Id.* It found that, given Mr. Martin's own disciplinary history and the fact that he had read a different lawyer's suspension order before allowing the suspended lawyer to work as a paralegal for him, Mr. Martin should have known that he could access the order and read its contents. *Id.* The Delaware Supreme Court determined that failing to consult the order amounted to "willful ignorance," which it has equated with "knowledge" in the disciplinary context. *Id.*

Finally, the Delaware Supreme Court found that Mr. Martin knowingly violated Rule 5.4(a) by giving Mr. Feuerhake the pre-suspension percentage of the *Burns* settlement fee. *Id.* at *7. It noted that it had already determined in Mr. Feuerhake's disbarment proceedings that the payment was for both pre- and post-suspension work. *Id.*; *see also In re Feuerhake II*, 89 A.3d at 1060. Unlike the employment cases, for which Mr. Feuerhake was paid an hourly wage, Mr. Feuerhake was paid in *Burns* according to the fee agreement entered into when he was a licensed attorney. *Id.* at *7. He was therefore paid as though he were a practicing lawyer. *Id.*

With respect to the appropriate sanction, the Delaware Supreme Court accepted neither party's position. The Delaware Supreme Court considered the factors set forth in the American Bar Association Standards for Imposing Lawyer Sanctions ("ABA Standards"): "(a) the ethical duty or duties violated; (b) the lawyer's mental state; (c) the extent of the actual or potential injury caused by the lawyer's misconduct; and (d) aggravating and mitigating factors." *Id.* at *7. The Delaware Supreme Court found that Mr. Martin "violated duties to his clients, to the legal

system, and to the profession." *Id.* Although his actions caused no actual injury, the Delaware Supreme Court found that they created the potential for injury. *Id.* With respect to mental state, the Delaware Supreme Court found that Mr. Martin did not act to benefit himself, but rather to "help a long-time friend and former colleague who had fallen on hard times." *Id.* at *8. The Delaware Supreme Court considered the same aggravating and mitigating factors as the Board, as well as Mr. Martin's remorse and medical issues. *Id.*

The Delaware Supreme Court found that Mr. Martin's misconduct was not so egregious as to warrant disbarment. *Id.* It noted that disbarment is generally reserved for situations in which an attorney violates a rule in order to benefit the attorney and the actions result in serious harm or the potential for serious harm. *Id.* at *7 (citing ABA Standards 6.21, 7.1). As noted above, the Delaware Supreme Court did not find that Mr. Martin acted to benefit himself. *Id.* at *8. The Delaware Supreme Court found that ABA Standards 6.22 and 7.2 were more applicable.

> Standard 6.22 states, "Suspension is appropriate when a lawyer knowingly violates a court order or rule, and there is injury or potential injury to a client or a party, or interference or potential interference with a legal proceeding." Standard 7.2 states, "Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system."

*Id.* The Delaware Supreme Court also noted that suspension was consistent with the discipline it had imposed in similar cases. *Id.* Accordingly, the Delaware Supreme Court suspended Mr. Martin from practicing law in the Delaware state courts for one year, effective November 18, 2014.

On December 8, 2014, Mr. Martin filed a motion for reargument. (D.I. 8, Ex. 8). Mr. Martin argued, for the first time, that Mr. Feuerhake was not suspended from practicing law before this Court during the relevant time period. (D.I. 8 at 677). Mr. Martin contended that Mr. Feuerhake's participation in the pretrial conference before Judge Sleet was therefore not the

unauthorized practice of law. (*Id.*). In support of his argument, Mr. Martin noted that Mr. Feuerhake was designated as an attorney in this Court's electronic filing system at the time of the *Burns* pretrial conference. (*Id.*). Mr. Martin argued that reciprocal discipline in this Court is governed by D. Del. LR 83.6 ("Rule 83.6"), which provides for a show cause hearing prior to imposing reciprocal discipline. (*Id.*). Mr. Martin noted that the ODC presented no evidence that such a hearing occurred with respect to Mr. Feuerhake. (*Id.*). Mr. Martin also argued that the Delaware Supreme Court's finding that he did not properly supervise Mr. Feuerhake failed to account for the fact that Mr. Feuerhake worked only part time. (*Id.* at 679). In addition, Mr. Martin repeated his previous arguments that Mr. Feuerhake's participation in the conference was at the invitation of Judge Sleet and that the fee was proper under a *quantum meruit* theory. (*Id.* at 678-79). The Delaware Supreme Court denied the motion for reargument on December 16, 2014. (D.I. 8, Ex. 10).

## PROCEDURAL HISTORY

On November 21, 2014, Mr. Martin filed in this Court a certified copy of the Delaware Supreme Court's suspension order, as provided for in Rule 83.6(b)(1), and a letter objecting to the imposition of reciprocal discipline. (D.I. 2). On December 5, this Court ordered Mr. Martin to show cause as to why it should not impose reciprocal discipline identical to that imposed by the Delaware Supreme Court, pursuant to Rule 83.6(b)(2). (D.I. 3). Mr. Martin responded to the order on January 5, 2015. (D.I. 7). The Panel held a disciplinary hearing on January 29, 2015.

## LEGAL STANDARD

Rule 83.6(b) governs the imposition of discipline reciprocal to that imposed by another court. Rule 83.6(b) provides that an attorney subjected to discipline by another court shall promptly inform the Court of such discipline. Once the attorney informs the Court, the Court

shall issue an order to show cause as to why it should not impose reciprocal discipline. Rule 83.6(b)(4) states that the Court shall impose identical discipline unless it finds that:

> (A) The procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or
> (B) There was such an infirmity of proof establishing the misconduct as to give rise to the clear conviction that this Court could not, consistent with its duty, accept as final the conclusion on that subject; or
> (C) The imposition of the same discipline by this Court would result in grave injustice; or
> (D) The misconduct established is deemed by this Court to warrant substantially different discipline.

D. Del. LR 83.6(b)(4)(A)-(D).

"A reciprocal disciplinary proceeding . . . , in which a federal court initiates action against a member of its bar based on the outcome of a state disciplinary proceeding against that attorney, requires federal courts to conduct an independent review of the state disciplinary proceeding prior to imposing punishment." *In re Surrick*, 338 F.3d 224, 231 (3d Cir. 2003). The United States Supreme Court has held that a district court's review should entail "an intrinsic consideration of the record." *Selling v. Radford*, 243 U.S. 46, 51 (1917). That is to say, "there is no entitlement to a *de novo* trial before the District Court." *In re Surrick*, 338 F.3d at 232. Rather, the district court should look at the state record as a whole and determine whether different discipline should be imposed. *Id.* at 231-32; *see also* D. Del. LR 83.6(b)(4).

This Court, "like all federal courts, has the power both to prescribe requirements for admission to practice before [the] court and to discipline attorneys who have been admitted to practice before [the] court." *Matter of Abrams*, 521 F.2d 1094, 1099 (3d Cir. 1975). A state disciplinary decision is "not conclusively binding on the federal courts," but it is "entitled to respect." *In re Ruffalo*, 390 U.S. 544, 547 (1968). The discipline imposed by the state is the starting point of the inquiry, but the Court has a duty "to determine for ourselves [an attorney's] right to continue to be a member of this Bar." *Selling*, 234 U.S. at 50.

It is well settled that the state and federal judiciaries draw their power from separate sovereigns. "The two judicial systems of courts, the state judicatures and the federal judiciary, have autonomous control over the conduct of their officers, among whom . . . lawyers are included." *Theard v. United States*, 354 U.S. 278, 281 (1957). It is therefore an appropriate exercise of discretion to consider imposing discipline different from the Delaware Supreme Court's, especially where, as here, the entirety of the conduct at issue occurred in this Court or in connection with matters pending before this Court.

## ANALYSIS

### A. Infirmity of Proof

Mr. Martin's primary contention is that there was an infirmity of proof to support the Delaware Supreme Court's findings. Mr. Martin argues that Mr. Feuerhake was fully licensed to practice law before this Court at the time of the pretrial conference in *Burns*. (D.I. 7 at 3). Mr. Martin maintains that, although Mr. Feuerhake was suspended from practicing in state court, no reciprocal discipline had formally been imposed by this Court. (*Id.*). Mr. Martin argues that he therefore could not have assisted in the unauthorized practice of law, because Mr. Feuerhake was authorized to practice before the Court. (*Id.* at 3-4).

Mr. Martin further argues that Mr. Feuerhake was introduced as a paralegal, and his participation in the conference was mostly at the invitation of Judge Sleet. (*Id.* at 4). In addition, Mr. Martin argues that any fees shared with Mr. Feuerhake were compensation for work performed before his suspension. (*Id.* at 5-6). Mr. Martin notes that the Board found that the fees were for pre-suspension work. (*Id.* at 6). Mr. Martin contends that these considerations demonstrate that there is an infirmity of proof to support the Delaware Supreme Court's findings.

The Panel finds that there is sufficient proof to support the Delaware Supreme Court's holding that Mr. Martin knowingly violated Rules 3.4(c), 5.3(a), 5.4(a), 5.5(a), and 8.4(d) by assisting in the unauthorized practice of law, assisting Mr. Feuerhake in violating his suspension order, failing to supervise Mr. Feuerhake, sharing fees with a non-lawyer, and engaging in conduct prejudicial to the administration of justice. The Panel finds that Mr. Feuerhake was suspended from practicing before this Court even though the Court did not go through the process set forth in Rule 83.6(b). The rule indicates that the disciplined attorney is to trigger the Rule 83.6(b) process. D. Del. LR 83.6(b)(1)-(2). If an attorney does not do so, the Court's default practice is that the attorney is subject to reciprocal discipline. Mr. Feuerhake did not "promptly inform the Clerk" of his suspension. (D.I. 9 at 3 n.2). He did not trigger the process and, therefore, was *de facto* suspended in this Court.

In addition, both Mr. Martin and Mr. Feuerhake understood Mr. Feuerhake to be suspended from practicing before this Court at the time of the *Burns* pretrial conference. It was Mr. Feuerhake who brought the issue to Judge Sleet's attention. Near the end of the pretrial conference he stated, "I am temporarily without license." (D.I. 8, Ex. 4 at 570). In addition, Mr. Martin asked Judge Sleet whether, at trial, Mr. Feuerhake could sit at counsel table in his capacity as a paralegal. (*Id.* at 571). He noted that paralegals in other courts are permitted to sit at counsel table, although "[o]bviously, they cannot participate as counsel." (*Id.*). Mr. Martin also asked Judge Sleet to amend an order that referred to Mr. Feuerhake as "Esquire." (*Id.* at 572). Moreover, Mr. Martin introduced Mr. Feuerhake as a paralegal. (*Id.* at 520). Mr. Martin testified that he believed Mr. Feuerhake was suspended from practicing before this Court. (Tr. at 42). It is clear that at the time of the pretrial conference, Mr. Martin and Mr. Feuerhake believed that Mr. Feuerhake was suspended from practicing in the Delaware state courts and in this Court.

While it is true that Mr. Feuerhake was designated as an attorney in the Court's electronic filing system at the time of the *Burns* pretrial conference, this was in error. It appears that Mr. Feuerhake was added as an attorney on the *Burns* docket on January 6, 2012. That is the same day that Judge Sleet issued an order mistakenly identifying Mr. Feuerhake as "Esquire"—the order that Mr. Martin brought to Judge Sleet's attention at the pretrial conference. Although it is impossible to say with certainty what prompted Mr. Feuerhake's reactivation in the Court's electronic filing system, it stands to reason that he was reactivated because he was identified as counsel in Judge Sleet's order. Mr. Feuerhake was removed from the system immediately following the pretrial conference.[6] The Panel does not believe that Mr. Feuerhake's mistaken reactivation in the electronic filing system demonstrates that he was not suspended.

In light of the Panel's determination that Mr. Feuerhake was suspended, the record supports the finding that Mr. Martin assisted Mr. Feuerhake in the unauthorized practice of law. Knowing that Mr. Feuerhake was suspended, Mr. Martin brought him to the pretrial conference and deferred to him on a legal question. This evidence is sufficient to show there was not an infirmity of proof.

The Panel also finds that there was not an infirmity of proof to support the finding that Mr. Martin shared legal fees with a non-lawyer. Unlike the other cases on which he worked, Mr. Feuerhake did not receive an hourly wage for his work on the *Burns* litigation. The compensation he received was the precise amount agreed upon between him and Mr. Martin

---

[6] It appears that Mr. Feuerhake may have again been reactivated later in the year. For reasons that cannot be explained, Mr. Feuerhake was able to use his CM/ECF privileges to make two filings in the *Barkes* litigation in April and July 2012, both of which were signed by Mr. Martin. *See* C.A. 06-104-LPS, D.I. 261 & 280.

when Mr. Feuerhake was a licensed lawyer.[7] He was paid as if he were acting as counsel. That is sufficient proof to support the Delaware Supreme Court's findings.

**B. Lack of Due Process**

Mr. Martin argues that his disciplinary procedure in the state court violated fundamental due process because he had no opportunity to present the argument that Mr. Feuerhake was not suspended in this Court. As demonstrated above, however, Mr. Martin had ample opportunity to present his argument. The Board conducted an investigation in which Mr. Martin cooperated and held two separate hearings, at which Mr. Martin testified. Mr. Martin had and took the opportunity to object to the Board's recommendation. He could have argued that Mr. Feuerhake was not suspended at any point in that process. He did not raise the issue until his motion for reargument.[8] The ODC filed its petition for discipline on August 28, 2013. (Board's Report and Recommendation at p. 1). The second hearing before the Board was in April 2014. *In re Martin,* 2014 WL 6998797, at *5. Mr. Martin had seven months to raise his argument, but failed to do so. Mr. Martin had notice and the opportunity to be heard on several occasions. The Panel finds that he was not denied due process.

**C. Grave Injustice**

---

[7] The implication of Mr. Martin's position with respect to the fee-sharing issue is that all of the work Mr. Feuerhake performed in the *Burns* case following his suspension was performed for free. That would mean Mr. Feuerhake received no compensation at all for the estimated 100-plus hours of time he put into the case between July 2010 and February 2012, including drafting briefs and arguing at the pretrial conference. While this may be, in fact, what occurred, there was no infirmity of proof supporting the Delaware Supreme Court's contrary finding.

[8] Mr. Martin explains that he did not "discover[]" that Mr. Feuerhake had not (in Mr. Martin's view) been suspended in this Court until after his own November 18, 2014 suspension from the Delaware Supreme Court. (D.I. 8, Ex. 8 at 1-2). Mr. Martin's failure to develop this argument or present it prior to his own suspension is not the result of any deprivation of due process by the Delaware Supreme Court.

In addition to the reasons discussed above, Mr. Martin argues that imposing reciprocal discipline would result in grave injustice because the Delaware Supreme Court imposed discipline that far exceeded the Board's recommendation. (D.I. 7 at 7). Mr. Martin argues that the Delaware Supreme Court failed to consider his medical issues, evidence of good character, and his excellent skills and abilities as an attorney. (*Id.*). Mr. Martin argues that a one-year suspension is particularly harsh because a suspension of that length requires reinstatement, a process which in the Delaware Supreme Court can take approximately a year. (*Id.*; *see also* Tr. at 23).

While a one-year suspension with the accompanying estimated one-year reinstatement period may present a significant hardship to Mr. Martin, particularly in light of his medical issues and good character, the Panel does not believe it rises to the level of grave injustice. The Delaware Supreme Court performs an independent review of the Board's findings and is not bound by the Board's recommendations. *In re Reardon*, 759 A.2d 568, 575 (Del. 2000). It is not unjust for the Delaware Supreme Court to follow its procedures and to impose discipline different from the Board's recommendation. The Delaware Supreme Court did consider Mr. Martin's health issues and character evidence. *In re Martin,* 2014 WL 6998797, at *8. Thus, the Panel cannot find that the Delaware Supreme Court's discipline rises to the level of grave injustice.

**D. Different Discipline**

The Panel finds that Mr. Martin's misconduct has been established, and Rule 83.6(b)(4)(A)-(C) cannot serve as grounds for not imposing reciprocal discipline. However, Rule 83.6(b)(4)(D) allows the Court in its judgment to impose different discipline. The Panel

concludes that Mr. Martin's misconduct does not warrant a twelve-month suspension before this Court.

"While a lawyer is admitted into a federal court by way of a state court, he is not automatically sent out of the federal court by the same route." *Theard*, 354 U.S. at 281. As noted, the state and federal judiciaries draw their powers from separate sovereigns, and each possesses the exclusive authority to regulate the attorneys practicing before it. The Panel finds that Mr. Martin's conduct warrants substantially different discipline from that imposed by the Delaware Supreme Court. Specifically, the Panel hereby imposes a four-month suspension from practicing law before the Court, retroactive to the date of Mr. Martin's suspension by the Delaware Supreme Court.

Among the reasons the Panel finds a four-month sanction to be appropriate is the limited nature of Mr. Martin's misconduct in assisting the unauthorized practice of law. Mr. Martin did not hold out a non-lawyer as an attorney or allow him to present an argument in full. The pretrial conference was held in an informal setting. Judge Sleet inquired about a case with which Mr. Martin was relatively unfamiliar, and Mr. Martin had a "deer in the headlights moment." (Tr. at 44). Mr. Martin testified convincingly that he had a momentary panic and deferred to Mr. Feuerhake, whom Mr. Martin knew to be more familiar with the case in question. (*Id.* at 43, 11). Almost all of Mr. Feuerhake's other contributions were solicited by Judge Sleet. Similarly, Mr. Martin's improper fee sharing was a one-time act. Mr. Feuerhake was paid an hourly wage as a paralegal for all his other work for Mr. Martin.[9]

---

[9] The *Barkes* litigation is ongoing and there is no indication that any fee has been received by either Mr. Martin or Mr. Feuerhake.

While the misconduct was limited, it was not Mr. Martin's first offense. An appropriate sanction requires that reinstatement not be automatic. A four-month suspension will require Mr. Martin to petition for reinstatement should he wish to continue to practice in this Court. *See* D. Del. LR 83.6(g)(3) ("An attorney suspended for more than 3 months or disbarred may not resume practice until reinstated by order of this Court."). Under the Court's rules, if such a petition is filed, the Chief Judge will refer it to counsel and assign the matter for a prompt hearing, at which the petitioner will have the burden to demonstrate, by clear and convincing evidence, that he "has the moral qualifications, competency and learning in the law required for admission to practice law before this Court and that petitioner's resumption of the practice of law will not be detrimental to the integrity and standing of the bar or to the administration of justice, or subversive of the public interest." D. Del. LR 83.6(g)(3).[10]

In reaching its conclusion that substantially different discipline than that imposed by the Delaware Supreme Court is warranted, the Panel has considered all of the aggravating and mitigating factors cited by the Delaware Supreme Court, as each is supported in the record. There are additional considerations which, understandably, were not factors in the Delaware Supreme Court's decision.

One of these considerations is the inconsistency between this Court's rules regarding reciprocal discipline and its practices. Historically, the Court has informally imposed the same discipline that is imposed by the Delaware Supreme Court. This is evidenced by what occurred with Mr. Feuerhake. Indeed, Mr. Martin is the first suspended attorney who has triggered the

[10] The Panel is cognizant of the potential difficulties Mr. Martin will face if he is promptly reinstated to this Court's bar following the procedures set forth in Rule 83.6(g), given that he will still be suspended from practice in the Delaware state courts. The Panel commends to his consideration *Surrick v. Killion*, 2005 WL 913332, at *12 (E.D. Pa. Apr. 18, 2005), *aff'd as modified*, 449 F.3d 520 (3d Cir. 2006).

official process set forth in Rule 83.6(b) by filing a certified order demonstrating he had been suspended by the Delaware Supreme Court pursuant to Rule 83.6(b)(2). (*See* D.I. 1). Consequently, as far as the Panel is aware, this is the first occasion the Court has had to conduct a disciplinary hearing, apply the standards of Rule 83.6(b)(4), and write an opinion regarding reciprocal discipline.

A related consideration is that, although the Panel finds that Mr. Feuerhake was suspended from practicing before this Court, the Panel acknowledges there is ambiguity in the Court's rules, which do not clearly characterize the status of an attorney disciplined by another court who does not go through the Rule 83.6(b) process. Rule 83.6(b)(5) notes that, unless the Court finds that Rule 83.6(b)(4) warrants imposing different discipline, "a final adjudication in another Court that an attorney has been guilty of misconduct shall establish conclusively the misconduct for purposes of a disciplinary proceeding in this Court." This section speaks only to establishing misconduct, and not to whether an identical sanction shall be imposed. In addition, the rules are ambiguous as to whether it is incumbent on the Court to issue an order to show cause if a disciplined attorney has not filed a certified order or judgment as set out in Rule 83.6(b)(2).[11]

[11] Reciprocal discipline, which can include suspension and disbarment, is a serious matter that can have grave consequences. Now that the ambiguity in the Court's rules and the inconsistency between its rules and its practices have come to the Court's attention, the Court is committed to ensuring that the rules and procedures surrounding such a weighty issue are carefully considered and clarified.

## CONCLUSION

For the reasons set forth above, it is hereby ordered that Jeffrey K. Martin is suspended from the practice of law before this Court for a period of four months, retroactive to November 18, 2014, the date of his suspension by the Delaware Supreme Court.

Entered this 26th day of February, 2015.

**PER CURIAM**